44503. CARTER v. THE STATE.
(361 SE2d 175)

BELL, Justice.

Donnie Carter was convicted of the murder of Earl Cooper and sentenced to life imprisonment.[1] We affirm.

Cooper and Carter were migrant workers who lived in the same trailer. On the morning of the murder, Carter told a fellow worker he was upset with Cooper because Cooper had slapped him the night

---

[1] The victim was killed October 5, 1986. Carter was indicted October 20, 1986. He was convicted December 17, 1986, and sentenced December 19, 1986. A motion for new trial was filed January 14, 1987, and was denied February 13, 1987. Carter filed a notice of appeal March 5, 1987. The transcript was certified by the court reporter March 16, 1987. The case was docketed in this court April 2, 1987, and was submitted for decision without oral arguments May 15, 1987.

before and earlier that morning. One witness testified that he walked past the trailer moments before the murder and saw Cooper lying face down on his bed with his hands folded under his head. At that same time the witness saw Carter walk into the trailer carrying a pipe and a bucket of ice. Shortly thereafter, people outside the trailer heard a noise from inside the trailer. One witness described the sound as "a soft lick." Carter then ran out of the back door of the trailer and told those outside, "[y]ou all better come get him." He then ran back into the trailer and delivered some more blows. Carter then ran out of the door, holding a bloody pipe.

Thomas Beles, who also lived in the trailer, testified that he was awakened by a noise and saw Carter holding a pipe and standing over Cooper, who was lying on his stomach with his arms folded under his head. Beles then saw Carter hit Cooper and say, "you s.o.b., I'll kill you."

When officers arrived at the scene, they found Cooper lying on his right side with the back of his head facing toward the bedroom door. Medical evidence showed that Cooper died from four laceration wounds to the back of his head.

Carter was arrested at the scene, and gave a statement to the police. Carter said that he met the victim in the hallway of the trailer and that Cooper pulled a knife on him. Carter stated that he hit Cooper in the head once and then put him in his bed. Although blood was found in the bedroom, none was found on the walls or carpet in the hallway.

1. Carter raised the issue of his competency to stand trial, and the trial court impaneled a jury to determine this issue. OCGA § 17-7-130. In his first enumeration Carter contends that the trial court incorrectly limited the scope of his cross-examination of a state's expert during the competency hearing.

Carter did not challenge the qualification of the state's witness to testify as an expert. He did, however, ask the expert whether juries in prior cases had failed to follow his recommendations. The state objected to the question, and the trial court sustained the objection. At trial Carter did not state the purpose of the question, but on appeal he contends that the question was relevant to the expert's credibility. He states that the question was designed to show that, although the expert was highly qualified, "his opinion did not have to be strictly followed, because he had, in fact, testified on the same subject matter many times and often other juries had disregarded his opinion." We find no error.

" 'The scope of cross-examination is not unlimited, but rests largely within the discretion of the trial court, and its discretion will not be disturbed on appeal unless it has been abused.' " *Williams v. State*, 254 Ga. 6, 11 (8) (326 SE2d 444) (1985), quoting *Moore v.*

512

*State*, 251 Ga. 499, 501 (2a) (307 SE2d 476) (1983). Accord *Smith v. State*, 255 Ga. 685, 686 (2) (341 SE2d 451) (1986). Moreover, in *Hicks v. State*, 256 Ga. 715, 720-721 (13) (352 SE2d 762) (1987), we stated that "[w]e agree . . . that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Accord *Smith v. State*, supra, 255 Ga.

Although Carter's argument is not entirely clear, we construe it as contending that the question was relevant, first, to illustrate to the jury that the expert's opinion did not have to be "strictly followed." If that was the purpose, then the trial court did not abuse its discretion in excluding the question, since all juries, as was this one, are charged that they are free to accept or reject the testimony of experts as they see fit.

We also construe Carter's argument as contending that the question was relevant for a second purpose — to elicit the response that other juries had not followed his recommendations, and to argue therefrom that the expert's conclusion in this case was erroneous. If that was the purpose, we also find no error. Because the facts of any previous case in which the expert may have testified would be unrelated to the present case, and because a jury, which can freely disregard expert testimony, could have chosen not to follow the expert's recommendation based on one of those unknown facts, the evidence Carter sought to elicit is of questionable relevance. This relevance problem is compounded by the fact that Carter did not make an offer of proof concerning what he expected the expert's answer to be. Obviously, the relevance of the expert's response would vary depending upon the number of juries who have elected not to follow the expert's recommendation. If only one of fifty juries had disagreed with the expert, then the evidence does not support the inference that Carter wanted the jury to draw — that the expert's opinion that Carter was competent was wrong. Finally, even assuming that the expert's answer would have been that a substantial number of juries had disagreed with him, we conclude that the trial court did not abuse its discretion in excluding the question. The state would have undoubtedly had the expert delve into the background of each case in which the jury did not follow his recommendation, and such an exercise could have confused the jury and certainly would have created undue delay in the trial of this case. *Hicks v. State*, supra, 256 Ga.; *Smith v. State*, supra, 255 Ga.

2. In the charge to the jury at the competency hearing, the trial court, when referring to Carter's plea of mental incompetency to stand trial, OCGA § 17-7-130, used the phrase "special plea of insanity or mental incompetency." Carter contends that the use of the

word "insanity" is inappropriate and may have confused the jury and led it to believe that it had to find that Carter was legally insane, that is, that he could not distinguish between right and wrong or was suffering from a delusional compulsion at the time of the alleged criminal act. See OCGA §§ 16-3-2 and 16-3-3.

However, although the trial court incorrectly used the term "insanity," see *Echols v. State*, 149 Ga. App. 620 (255 SE2d 92) (1979); *Brown v. State*, 250 Ga. 66 (2) (c) (295 SE2d 727) (1982), it did correctly instruct the jury regarding the substantive test to apply in determining whether Carter was competent to stand trial, see *Brown v. State*, 215 Ga. 784 (113 SE2d 618) (1960). In *Brown*, we said that the issue "is not whether the defendant can distinguish between right and wrong, but is, whether he is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." Id. at 787. Accord *Crawford v. State*, 240 Ga. 321, 326 (240 SE2d 824) (1977); *Lindsey v. State*, 252 Ga. 493, 496 (314 SE2d 881) (1984). In the instant case we conclude that the jury charge, when viewed as a whole, was proper.

3. Carter contends that his statement to the arresting officer was inadmissible because his intoxication (he registered .19 on a blood alcohol test) precluded a valid waiver of his *Miranda* rights. We disagree. The defendant was afforded a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), following which the trial court determined that Carter understood his *Miranda* rights and freely and voluntarily waived them. Unless clearly erroneous, a trial court's findings relating to the admissibility of an incriminating statement will be upheld on appeal. *Davis v. State*, 255 Ga. 598, 607 (11) (340 SE2d 869) (1986); *Cunningham v. State*, 255 Ga. 727, 730 (2) (342 SE2d 299) (1986). Under the circumstances of this case, we find no error in the admission of Carter's statement. *Cunningham v. State*, supra, 255 Ga. at 729-730.

4. In his final contention Carter challenges the sufficiency of the evidence. However, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found Carter guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 1987.

*Hugh J. McCullough,* for appellant.
*Dupont K. Cheney, District Attorney, J. Thomas Durden, Assis-*

tant District Attorney, Michael J. Bowers, Attorney General, Dennis
R. Dunn, Assistant Attorney General, for appellee.