## S94P1271. MOBLEY v. THE STATE.
### (455 SE2d 61)

FLETCHER, Justice.

Stephen Anthony Mobley was convicted of murder, armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. The jury recommended the death penalty for the murder, finding the aggravating circumstance of armed robbery. OCGA § 17-10-30 (b) (2). The trial court sentenced Mobley to death and Mobley appeals.[1] We affirm.

1. The evidence established that shortly after midnight on February 17, 1991, Mobley robbed a Hall County pizza store and shot John C. Collins, the store manager, in the back of the head with a Walther .380 semi-automatic pistol. The physical evidence from the scene was consistent with a statement Mobley later made to a cellblock inmate that Collins was on his knees when Mobley shot him. Approximately three weeks after the crimes in issue, Mobley used the pistol while robbing a dry-cleaning store, and tried to dispose of it by tossing it out his car window onto the side of a road when he realized he was being followed by an unmarked police car. The pistol was later recovered and Mobley arrested, after a high-speed chase. Mobley made statements to the police confessing to the murder of Collins and the robbery of the pizza store. In response to Mobley's statement to police that on the night of the crimes he was en route from his residence to a family member's home (where he was not expected) and that he robbed the pizza store because it was the only open establishment he passed, the state introduced testimony establishing that out of the three routes available to Mobley, only one passed the pizza store, and that this route exceeded by over ten miles the next shortest route to the family member's house.

---

[1] The crimes occurred February 17, 1991. Mobley was indicted March 19, 1991 in Hall County. The state filed its notice of intent to seek the death penalty on March 20, 1991. Mobley's first trial in February 1992 ended in a mistrial. After a second trial, beginning February 7, 1994, the jury found Mobley guilty of malice murder, felony murder based on five separate underlying felonies, and guilty of those five underlying felonies (armed robbery, three counts of aggravated assault, and possession of a firearm in the commission of a crime) on February 16, 1994. The jury's recommendation of a death sentence was returned on February 20, 1994. The trial court imposed sentence on February 28, 1994 nunc pro tunc February 20, 1994. A notice of appeal was filed on February 22, 1994. The transcript was certified on April 29, 1994. The appeal was docketed on May 18, 1994. Oral arguments were heard on September 26, 1994.

When considered in the light most favorable to the verdict, we conclude that the evidence was sufficient to permit a rational trier of fact to find Mobley guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mobley made a motion seeking funds for expert witnesses to conduct preliminary testing to determine the existence of a genetic disorder.[2] Mobley based his motion on "very recently" published articles and scientific studies "that suggest a possible genetic basis for violent and impulsive behavior in certain individuals." After reviewing the documentation submitted by Mobley, the trial court denied the motion and the motion for reconsideration, finding that the theory behind the request for funds will not have reached a scientific stage of verifiable certainty in the near future and that Mobley could not show that such a stage will ever be reached. See *Harper v. State*, 249 Ga. 519, 525-526 (1) (292 SE2d 389) (1982). Compare *Caldwell v. State*, 260 Ga. 278 (1) (393 SE2d 436) (1990). Additionally, the trial court correctly assumed that evidence in mitigation in the sentencing phase of a capital case "may not have to have reached a scientific stage of verifiable certainty normally required for the introduction of scientific evidence." See *Bright v. State*, 265 Ga. 265 (455 SE2d 37) (1995) ("the determination whether expert assistance is required at the penalty phase requires consideration of a different set of factors than the determination whether expert assistance is necessary at the guilt phase"). Even under this assumption, the court found that a greater showing of certainty was required than that shown by Mobley. We find no error in the trial court's ruling. See generally *Williams v. State*, 251 Ga. 749, 750 (1) (312 SE2d 40) (1983) ("[i]t is for the trial court to determine whether a given scientific principle or technique is competent evidence").

3. Mobley's arguments regarding the trial court's ruling as to the constitutionality of OCGA § 17-10-16, the life-without-parole statute, are without merit. See *Freeman v. State*, 264 Ga. 27, 28 (2) (a) (440 SE2d 181) (1994).

4. Mobley contends the trial court erred in granting the state's 1991 motion pursuant to *Sabel v. State*, 248 Ga. 10 (282 SE2d 61) (1981) and OCGA § 17-7-211 for a copy of "any and all scientific reports" prepared by Mobley's experts. We held in *Rower v. State*, 264 Ga. 323 (5) (443 SE2d 839) (1994), that with regard to scientific reports, "the state is entitled to only those discovery rights specifically granted to the defendant by OCGA § 17-7-211." Id. at 325. We

---

[2] The defense sought funds to determine whether Mobley suffers from a deficiency of enzymatic activity for monoamine oxidase A with follow-up genetic testing.

pointed out that, consistent with discovery rights granted the defendant, the state may discover only those written reports generated by defense experts that the defense intends to introduce at trial and overruled *Sabel* to the extent it conflicted with this holding. Id. Although *Rower* was decided after Mobley's case was tried, because Mobley's appeal was "in the pipeline," see *Taylor v. State*, 262 Ga. 584 (2) (b) (422 SE2d 430) (1992), the *Rower* rule applies, id., and there was error. See *Thornton v. State*, 264 Ga. 563 (16) (449 SE2d 98) (1994).

However, it is an old and sound rule that error to be reversible must be harmful. *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741) (1966). Mobley does not assert, nor does the record reflect, that Mobley was required to provide or did in fact provide the state with any scientific reports in violation of the *Rower* rule. Accordingly, because Mobley cannot show that harm resulted from the error, reversal is not required.

5. Mobley's enumeration nos. 20 and 21 are controlled adversely to him by our previous decision in his case. See *Mobley v. State*, 262 Ga. 808 (1), (3) (426 SE2d 150) (1993) ("*Mobley I*").

6. In *Mobley I*, this court held that Mobley failed to prove that Latinos are underrepresented on jury lists in Hall County. Id. at 810. Upon return of the remittitur, Mobley again filed motions challenging the grand jury composition and seeking to quash the indictment, and also, in a motion that complied with this court's holding in *Roseboro v. State*, 258 Ga. 39 (3) (d) (365 SE2d 115) (1988), sought funds for an expert witness to conduct a study to prove the alleged underrepresentation of Latinos on Hall County jury lists.

The trial court found no evidence that Latinos were a cognizable group in Hall County under the 1980 census, which was the census applicable at the time of Mobley's indictment, see generally *Walraven v. State*, 250 Ga. 401, 405 (297 SE2d 278) (1982); that there is no allegation of intentional exclusion of Latinos from the jury lists; that Latinos are included on the jury lists but there is uncertainty as to the numbers, see *Mobley*, 262 Ga. at 810, n. 1; and that even using the 1990 census and the testimony of Mobley's witnesses, the percentage of Latinos eligible to serve in Hall County represented 0.8 percent of the persons over 18 in the county. The trial court also noted that the alleged underrepresentation of Latinos in the 1990 census occurred notwithstanding defense witnesses' own efforts to have all Hall County Latinos reflected in that census.

Based on these findings the trial court held that Mobley had not shown that a legitimate issue existed regarding the alleged underrepresentation of eligible Latinos on the Hall County jury list and denied his motion for funds to hire an expert. In the absence of any more reliable evidence than that submitted at the first hearing on the mo-

tion to quash, the trial court denied the renewed motion to quash the indictment.

Because the record supports the trial court's rulings, we find no abuse of the trial court's discretion in denying Mobley's motion for funds to obtain an expert. *Roseboro*, 258 Ga. at 39. The trial court did not err by denying the renewed motion to quash the indictment. See *Hicks v. State*, 256 Ga. 715 (7) (352 SE2d 762) (1987).

7. Mobley maintains the trial court erred in failing to excuse seven prospective jurors for cause for indicating they would automatically impose the death penalty under certain circumstances posed by counsel. A careful review of the responses reveals that each of these jurors was, to varying degrees, equivocal regarding their beliefs about the death penalty, the circumstances under which they would favor imposing it, and whether they would favor it over a sentence of life imprisonment. However, the record supports the trial court's findings that each juror in question was capable of serving impartially, and would consider both the evidence in mitigation and the trial court's instructions in determining the appropriate sentence. "These findings are entitled to deference from this court." *Ledford v. State*, 264 Ga. 60, 64 (6) (b) (439 SE2d 917) (1994). We find no error. *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985); *Thornton*, 264 Ga. at 573.

8. Mobley contends the trial court erred by refusing to allow him to question potential jurors during voir dire about their understanding of the meaning of a life sentence and the meaning of a death sentence.

[A] prospective juror's personal views regarding the meaning of a life sentence or [a death sentence] are extraneous to his or her ability to serve as a juror, unless it can be shown that those views would seriously impair the juror's performance of his or her duties.

*Burgess v. State*, 264 Ga. 777 (3) (450 SE2d 680) (1994). Because Mobley made no such showing with regard to any of the prospective jurors in this case, the trial court did not err by refusing to allow the challenged questions. We do not agree with Mobley that a different result is demanded by *Simmons v. South Carolina*, 512 U. S. _____ (114 SC 2187, 129 LE2d 133) (1994), given its "relatively narrow proposition." See *Burgess*, 264 Ga. at 788 (33).

9. Mobley raises two enumerations regarding the testimony of Kenneth Birchfield, an inmate serving a life sentence pursuant to a federal criminal conviction, who testified that while incarcerated in the same cellblock with Mobley, Mobley stated to him that Collins was on one or both knees when shot and that once his trial was over,

Mobley "was going to apply for a night manager's job at [the pizza store] because he knew they needed one."

(a) Birchfield testified that his only request in exchange for his testimony was that he be transferred to another prison. On cross-examination defense counsel sought to impeach Birchfield with a 1992 memorandum, written by the district attorney at that time, C. Andrew Fuller, which set forth the contents of a telephone conversation between Fuller and Birchfield's attorney, David Lipscomb. The memorandum related that Lipscomb had "advised" that "his client . . . was requesting that [Fuller] take the following steps" in connection with Birchfield's anticipated testimony, namely, that Fuller contact a certain federal prosecutor and request she not oppose Birchfield's filing of a sentence modification motion in federal court. The trial court refused to allow use of the memorandum, although counsel was allowed to question Birchfield, who testified that he and Lipscomb had discussed the matter but denied ever directly making that request.

We find no error in the trial court's refusal to allow Mobley to impeach Birchfield with Fuller's memo. OCGA § 24-9-83 provides: "A witness may be impeached by contradictory statements previously *made by him* as to matters relevant to his testimony and to the case." (Emphasis supplied.) The memorandum was not written by Birchfield, compare *Beckworth v. State*, 183 Ga. 871 (4) (190 SE 184) (1937), and did not record any statement made by Birchfield. Compare *Gee v. State*, 210 Ga. App. 60 (2) (435 SE2d 275) (1993). The transcript reveals that defense counsel was unable to substantiate his claim that the memo recorded statements generated by Birchfield and merely conveyed by his agent, Lipscomb, to Fuller.[3]

(b) During cross-examination, defense counsel impeached Birchfield with a certified copy of his previous federal conviction. It appears from a proffer made by Mobley that Birchfield, who was sentenced pursuant to the United States Sentencing Guidelines, had his base offense level increased by several "offense levels" as the result of the application of various sentence "enhancements." The trial court did not allow Mobley to cross-examine Birchfield regarding these sentence enhancements. Mobley has cited no authority, nor has our research revealed any, allowing impeachment of a witness by conviction not merely of the crime itself but also on the factors taken into consideration by the sentencing court in determining the severity of the sentence imposed for that crime. Georgia does not allow a witness to

---

[3] The trial court allowed counsel to contact Fuller and Lipscomb by telephone to inquire about their recollections of the memorandum; the import of these inquiries was then related by counsel to the court and reflected that neither Fuller nor Lipscomb had any independent recollection that the request in the document had been generated by Birchfield, as opposed to Lipscomb acting on his own initiative in the best interest of his client.

be discredited by showing that the witness "committed, [was] arrested for, confined for, or even indicted for" a criminal offense, *McCarty v. State*, 139 Ga. App. 101, 103 (1) (227 SE2d 898) (1976), or by the details surrounding the criminal conviction itself. *Vincent v. State*, 264 Ga. 234 (442 SE2d 748) (1994). See also Federal Rule of Evidence 609 (a) (evidence that a witness other than an accused "has been convicted of a crime" admissible under certain circumstances). We find no abuse of the trial court's discretion in disallowing Mobley's cross-examination into Birchfield's sentence enhancement. See generally *Carter v. State*, 257 Ga. 510, 511-512 (1) (361 SE2d 175) (1987).

10. Both Birchfield and the medical examiner made passing, non-responsive comments regarding Mobley's prior trial. After the first mention, the trial court explained to the jury that the original trial was "stopped for an evidentiary reason [that] has nothing to do with the case here today" and that was "no fault of the defense" and gave extensive curative instructions. In light of these instructions we find no abuse of the trial court's discretion in denying Mobley's motions for mistrial. *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982).

11. Mobley objected to the crime scene videotape on the grounds that it was inflammatory and duplicated the still photographs of the body and crime scene, which the state also introduced in evidence. We have reviewed the crime scene videotape shown to the jury and find no abuse of discretion in the court's ruling. *Foster v. State*, 258 Ga. 736 (7) (374 SE2d 188) (1988).

12. Pursuant to Mobley's motion for a change of venue, the trial court transferred the case from Hall County to Oconee County, where the guilt-innocence phase of the trial was conducted. The penalty phase of the trial, however, was conducted in Hall County, where the jury was sequestered throughout the proceedings. Mobley contends that because the record does not affirmatively reflect his consent to the penalty phase being conducted in Hall County, reversible error was committed under our holding in *Hardwick v. State*, 264 Ga. 161 (2) (442 SE2d 236) (1994), in which we held that USCR 19.2 (B)[4] is unenforceable, absent consent of the parties, because it conflicts with OCGA § 17-7-150 (a). Although *Hardwick* was decided after Mobley's case was tried, the "in the pipeline" rationale discussed above in Division 4 also applies here. However, "[a]pplication of [a] new rule to a pending case will, of course, depend on the preservation of the issue for appellate review." *Taylor*, supra at 586. The record fails to reflect

---

[4] USCR 19.2 (B) provides that when there has been an order granting a change of venue to a county other than the one in which the action was pending, the trial jury selected in the transferee county may, in the discretion of the presiding judge, hear the trial in the transferor county.

any objection by Mobley to the penalty phase trial being conducted in Hall County. Furthermore, Mobley has failed to establish that the trial court's error harmed him. See *Dill*, 222 Ga. at 794. Accordingly, we find no reversible error.

13. While it may be the better practice for a trial court to conduct a hearing out of the presence of the jury to determine whether the testimony of witnesses, relating to non-statutory aggravating circumstances, is reliable, see *Thornton*, 264 Ga. at 577 (22) (b), there is no requirement in this state that such a hearing be conducted and we decline Mobley's request to impose such a requirement.

14. A police officer testified during the penalty phase that during questioning Mobley had denied committing the armed robbery and murder. Mobley objected to the admission of this testimony because it had not been furnished to the defense as required by OCGA § 17-7-210. The oral statement, however, was not directly inculpatory, but was relevant only as rebuttal to Mobley's theory developed during the penalty phase that he had cooperated fully with the police. See *Ledesma v. State*, 251 Ga. 487, 489 (5) (306 SE2d 629) (1983); see also *Dawson v. State*, 203 Ga. App. 146, 147 (1) (416 SE2d 125) (1992). Considering all the circumstances, we find no reversible error.

15. A witness testified that while incarcerated with Mobley, Mobley forcibly sodomized him on two occasions. We find no abuse of the trial court's discretion in restricting Mobley's cross-examination of this witness regarding his sexual conduct with others. See OCGA § 24-2-3; *Mobley v. State*, 212 Ga. App. 293, 294 (1) (441 SE2d 780) (1994).

16. We find no abuse of the trial court's discretion in restricting Mobley's cross-examination of Deputy Spinola regarding the alleged "atmosphere of violence" at the Hall County Detention Center. See *Carter*, 257 Ga. at 511-512.

17. The trial court did not err by restricting Mobley's cross-examination of Self, who had been incarcerated with Mobley because he violated his probation for a weapons charge, regarding the details of his weapons conviction. *Vincent*, 264 Ga. at 235.

18. (a) Mobley contends that Judge Andrew Fuller's testimony during the penalty phase was irrelevant, inflammatory and highly prejudicial and should have been excluded. Fuller is the former district attorney for Hall County and at the time of trial had been a superior court judge for approximately six months. Fuller's testimony was offered as rebuttal evidence to Mobley's evidence presented in mitigation that he offered to plead guilty to all charges in exchange for the state's agreement not to seek the death penalty. We find no error in the trial court's ruling, but now disapprove of the admission of evidence of a conditional plea in the penalty phase.

In the prior appearance of this case, Mobley argued and this

court held that he could introduce evidence in the penalty phase that he had offered a conditional plea of guilty. *Mobley*, 262 Ga. at 811. In *Mobley I*, we also stated that "if the defendant wishes to inform the jury that he offered to plead guilty in exchange for a life sentence, the state reasonably and properly may argue that nothing less than a death sentence [was] appropriate." Id. Fuller's testimony regarding the factors he considered in determining to seek the death penalty was relevant given Mobley's evidence that he offered to plead guilty in exchange for a sentence less than death.[5] Fuller's testimony about the evidentiary features of this case that influenced his decision were already a part of the record, and the jury had heard testimony about each evidentiary factor previously. Thus, there was no suggestion that the district attorney had based his decision on knowledge about the crime or the defendant outside the record. Compare *Berger v. United States*, 295 U. S. 78, 88 (55 SC 629, 79 LE 1314) (1935) (error where prosecutor asserted that he had personal knowledge not in the record). We have reviewed Fuller's direct testimony and thorough cross-examination and do not find it to be inflammatory or highly prejudicial. Therefore, admission of Fuller's testimony does not require reversal of the sentence. OCGA § 17-10-35 (c) (1) (must invalidate death sentence based on "passion, prejudice, or any other arbitrary factor"); *Conner v. State*, 251 Ga. 113 (5), (6) (303 SE2d 266) (1983) (argument by prosecutor, while irrelevant and improper, not so prejudicial or offensive to require reversal of death sentence).

(b) A review of the transcript, however, convinces us that the policy consideration underlying the holding in Division 4 of *Mobley I* is outweighed by the conflicts such evidence imposes upon counsel and by the potential for abuse.[6] By allowing the defense to introduce evidence of a conditional offer to plead guilty, the holding in *Mobley I* virtually mandates that counsel for both the defense and the prosecution testify at trial. As a result, counsel are forced into ethical conflicts, their credibility is improperly placed in issue, and advocacy roles are impaired. Georgia's Code of Professional Responsibility provides that

> [w]hen a lawyer is a witness for his client, except as to merely formal matters, . . . he should leave the trial of the case to other counsel. *Except when essential to the ends of*

---

[5] We note that the trial court overruled Mobley's objection to the rebuttal evidence before Mobley elected to introduce the plea offer evidence.

[6] *Mobley I* was consistent with this court's policy to "refuse[ ] to place unnecessary restrictions on the evidence that can be offered in mitigation at the sentencing phase of a death penalty case." *Romine v. State*, 251 Ga. 208, 217 (305 SE2d 93) (1983).

*justice,* a lawyer should avoid testifying in court on behalf of his client.

(Emphasis supplied.) DR 5-102. See also EC 5-9 ("[a]n advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility"). Because of the ethical conflicts inherent in such situations, many courts have disapproved the practice and allow testimony by counsel in criminal trials only in rare circumstances. See *Ex parte Gilchrist,* 466 S2d 991 (Ala. 1985); *State v. Hayes,* 473 SW2d 688, 691-692 (Mo. 1971). The potential for counsel to be placed in untenable ethical conflicts is simply too great, especially considering the importance of the penalty phase in a death penalty case, to justify whatever value the rare plea offer may represent as mitigating evidence.

Additionally, although in this case the testimony of Fuller was not inflammatory or highly prejudicial, the potential is great that evidence offered by defense counsel or the prosecution will inject the sentencing hearing with inflammatory matters that could lead to the arbitrary imposition of a death sentence. Therefore, we now hold that offers by defendants to plead guilty and testimony of prosecutors regarding their reasons for rejecting such offers are no longer admissible.

19. To the extent that the prosecution's closing argument in the penalty phase can be read as introducing victim impact evidence to the jury, we find that the trial court's curative instructions were sufficient to dispel any harm, *Hill v. State,* 263 Ga. 37 (12) (427 SE2d 770) (1993), and that there was no abuse of the trial court's discretion in denying Mobley's motion for a mistrial. See generally *Everett v. State,* 253 Ga. 359 (3) (320 SE2d 535) (1984).

20. The record reveals that during a poll conducted after the jury initially announced having reached a verdict in the penalty phase, one juror responded in the negative to the question whether she freely and voluntarily agreed with the verdict. The trial court immediately ordered the jury to resume its deliberations and subsequently denied Mobley's request that the jury be recharged on the principle that jurors should not surrender their honest opinions as to the appropriate verdict.

We find no abuse of the trial court's discretion by ordering the jury to continue its deliberations, *Romine v. State,* 256 Ga. 521 (1) (350 SE2d 446) (1986), and no reversible error in its refusal of Mobley's request to repeat an earlier charge. See *Jackson v. State,* 263 Ga. 468 (1) (435 SE2d 442) (1993) (the court is not bound to repeat all the law favorable to the accused); see also *Glover v. State,* 237 Ga. 859 (2) (230 SE2d 293) (1976).

21. The jury found one aggravating circumstance. OCGA § 17-10-30 (b) (2) (murder committed while the defendant was engaged in the capital felony of armed robbery). The evidence supports this finding. OCGA § 17-10-35 (c) (2).

22. We do not find that Mobley's death sentence was imposed as the result of impermissible passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). Mobley's death sentence is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case, in that all these cases involved the deliberate, unprovoked killing of a robbery victim or victims, and thus show the willingness of juries to give the death penalty under these circumstances.

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in part and dissents in part.*

APPENDIX.

*Christenson v. State*, 262 Ga. 638 (423 SE2d 252) (1992); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980). See also *Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Harrison v. State*, 257 Ga. 528 (361 SE2d 149) (1987); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Beck v. State*, 255 Ga. 483 (340 SE2d 9) (1986); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981).

HUNSTEIN, Justice, dissenting in part.

The jury in the sentencing phase of this case heard C. Andrew Fuller, a sitting superior court judge,[7] testify that while serving as district attorney, he made the initial decision to seek the death penalty against Mobley and could state from personal knowledge the reasons behind that decision. Judge Fuller then itemized the factors he had

---

[7] Judge Fuller testified that he was appointed to his position on the bench of the Northeastern Judicial Circuit by the Governor in July 1993 after having "serve[d] the citizens of Hall and Dawson County as their district attorney" from January 1987 upon his election to that office. Judge Fuller testified that he was one of three judges in the circuit and that he served with the judge presiding over Mobley's trial.

considered in making the decision, which included such matters as:

Appellant's lack of remorse and a personality of "pure un-adulterated meanness";

The financial cost of death cases to taxpayers;

Discussions with the victim's family and their support of a death sentence as the appropriate penalty;

Consideration of whether "last minutes of [victims'] lives were more horrible to them than in other cases";

His feeling that Mobley's description of the murder to Birch-field was "unmerciful";

The strength of the State's evidence (a factor which made up "95 percent" of the decision), as to which Judge Fuller repeated in detail the most damaging evidence adduced by the State in both the guilt-innocence and sentencing phases of the trial and inferences he had drawn from that evidence.

Judge Fuller summed up his decision to seek the death penalty with the statement: "I've handled many cases with heinous facts of a killing, but I have never, never seen a defendant like Mr. Mobley."

It strains credulity that the majority can conclude the admission of Judge Fuller's testimony was neither "inflammatory [n]or highly prejudicial." The matters Judge Fuller's thorough and deliberately-introduced testimony presented for consideration by the jury clearly extended far beyond what is characterized by the majority as "evidentiary features of the case." Judge Fuller's testimony went directly to the ultimate issue before the jury — whether Mobley should receive mercy (i.e., life imprisonment) or a death sentence — and represented an emphatic, personalized vouching for the appropriateness of the death sentence in this case. The jury heard a superior court judge weigh the evidence, pronounce his satisfaction with the sufficiency of that evidence to support a death sentence and the propriety of such a sentence vis-a-vis other murders committed in the county, and conclude with his personal assessment of the defendant's character. This evidence constituted a recital in testimonial form of the essence of the State's closing argument, replete with the imprimatur of the judicial branch.

This Court made a mistake in Division 4 of *Mobley v. State*, 262 Ga. 808 (426 SE2d 150) (1993) when it authorized a defendant to introduce as "mitigating evidence" during the sentencing phase the fact that he had made a conditional offer to plead guilty. I join with the majority in disapproving that ill-considered holding, the grievous consequences of which are so painfully illustrated by the case before us

now. I am constrained to dissent, however, because rather than accept responsibility for the mistake in *Mobley* and grant this appellant a new sentencing trial free of the inflammatory evidence, ethical conflicts, and patent abuses which motivate this Court to repudiate *Mobley* now, the majority commits yet another mistake by affirming a death sentence rendered fundamentally unfair by the admission of Judge Fuller's testimony, evidence this Court expressly authorized and approved.

The defense did not deliberately manufacture an error by introducing Mobley's offer to plead guilty into evidence. Mobley did nothing more than what this Court said it was proper for him to do. True, following this Court's holding led to a fundamentally unfair trial: but if this Court could not foresee the consequences, how can we reasonably expect a defendant facing a death sentence to possess greater wisdom and exercise better judgment? True, as well, that this Court left it to Mobley to "elect" to introduce this evidence: but in his desperate position, with virtually no mitigating factors to excuse his acts, how much "choice" did Mobley really have?

This Court has the responsibility to review death cases and invalidate those imposed for passion, prejudice, or other arbitrary factors. OCGA § 17-10-35 (c) (1). Because "every decision to impose the death penalty implicates the procedural and substantive protections of the Eighth Amendment, . . . our review must, at a minimum, be sufficient to satisfy those protections." *Conner v. State*, 251 Ga. 113, 117 (303 SE2d 266) (1983). By a course of events initiated by this Court, the jury in the penalty phase of this case was improperly exposed to all the factors — financial, political, legal, psychological — a district attorney considers in deciding to seek the death penalty. These factors have nothing whatsoever to do with the issues a jury should consider in determining whether or not a defendant deserves to die for his crime and could only adversely influence a jury in its consideration whether to recommend mercy. The admission of Judge Fuller's testimony was so egregious that it constituted reversible error under OCGA § 17-10-35 (c) (1) and rendered Mobley's sentencing trial fundamentally unfair.

This Court made a mistake in *Mobley*: the majority makes another by affirming a death sentence insupportable under the Eighth Amendment and OCGA § 17-10-35 (c) (1). Because I would reverse the death sentence and remand for retrial on the penalty phase, I dissent.[8]

---

[8] I concur fully in Divisions 1, 3 through 17, and 19 through 22. To the extent Division 2 can be read as requiring scientific evidence adduced in mitigation at the sentencing phase to meet the standard of *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982), I concur in the judgment only in that division.

DECIDED MARCH 17, 1995.

*Michael K. McIntyre, Charles E. Taylor, Summer & Summer, Daniel A. Summer,* for appellant.

*Lydia J. Sartain, District Attorney, Leonard C. Parks, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Michael D. Groves, Assistant Attorney General,* for appellee.

*Michael Mears,* amicus curiae.