S97A0319. GLEAN v. THE STATE.
(486 SE2d 172)

SEARS, Justice.

The appellant, Michael A. Glean, formerly a member of the Bar of this State,[1] was convicted of the murder of Kimberly Wallace. The State sought the death penalty, but the jury recommended that Glean receive a sentence of life in prison.[2] Glean now appeals, contending, among other things, that the trial court erred in denying his motion to suppress evidence that was discovered in a plane Glean was flying at the time he was stopped; that the trial court, a Ware County Superior Court judge, committed reversible error by picking a jury in Chatham County, but returning it to Ware County for trial; that the trial court erred in permitting contact with the sequestered jury; that the trial court committed error in certain charges to the jury; and that the evidence is insufficient to support the conviction. Finding no error, we affirm.

A review of the relevant transcripts reveals that a corrections officer at Ware Correctional Institute, which is located next to the Waycross Airport, testified that about 1:50 a.m. on December 14, 1990, he was on perimeter patrol of the Institute and observed a plane fly low to the ground over the Waycross Airport, circle the

---

[2] This decision addresses and reverses only Division 1 of the majority opinion of the Court of Appeals.

[1] In 1993, this Court accepted Glean's voluntary suspension of his license to practice law. *In the Matter of Glean,* 262 Ga. 886 (427 SE2d 273) (1993).

[2] The crime occurred on the evening of December 13-14, 1990. Glean was indicted on January 18, 1991. Glean was tried from May 6-18, 1992. The jury returned a guilty verdict on May 17, and recommended a life sentence on May 18. The court reporter certified the trial transcript on June 12, 1992. Glean filed a motion for new trial on June 17, 1992, and amended his motion for new trial on March 6, 1995, and again on March 1, 1996. The trial court denied Glean's motion for new trial, as amended, on September 6, 1996, and Glean filed a notice of appeal on October 4, 1996. The appeal was docketed in this Court on November 19, 1996.

Institute, and then land on the main runway, without activating the radio-controlled runway lights. After landing, the plane taxied to a wooded area of the runway, as far from the hangars and other facilities as was possible. The correctional officer contacted the local police and informed them of what he had observed.

Officer Ken Mock and Sergeant Tim Pafford of the Ware County Sheriff's Office responded to the scene, each in their separate cars. They arrived at the airport about 2:00 a.m. Because they initially did not see the plane, they began to drive down the runway. They first observed the plane when they were about 300 feet from it. At that time, the officers activated their bright lights. According to Pafford and Mock, as the officers approached the plane, it started its engine and the propellers began to turn. Pafford and Mock then activated their emergency lights. Officers Pafford and Mock parked close to the airplane, but about 45 yards apart. Glean then exited the airplane, and approached Mock's patrol car. In the ensuing investigation, the officers noticed that Glean was acting nervous, sweating profusely even though it was a cold night, and "running off at the mouth." They also noticed that both the pilot door and the front passenger seat of the airplane had been removed, and that a large black box occupied most of the compartment of the plane. Further, although Glean produced a pilot's license and a Bar Card, he did not have a driver's license or other photographic identification with him. There also was testimony that the airplane was on an "airstrip that is not used at night, especially; not used very often during the day."

Moreover, a drug dog was brought to the scene, and alerted to drugs on the side of the airplane where the door was missing. After the alert, a search warrant was obtained for the aircraft. After obtaining the warrant, the officers opened the black box in the plane. The box contained the nude body of a white female with a plastic bag over her head and a bandana and clothesline around her neck. The body was subsequently identified as that of Kimberly Wallace, the 28-year-old estranged wife of Glean's client, Jack Wallace. Her body indicated signs of death by strangulation, and blood analysis indicated a near lethal dose of diazepam and phenobarbital. The black box had been modified so that the end of the box was hinged like a door, and the inside of the box had been coated with petroleum jelly. Further searching of the plane revealed an aeronautical map of the Okefenokee Swamp, marked at a location near the middle of the swamp, and goggles that would allow the pilot to fly without a door on the plane. In addition, a watch that subsequently was identified as belonging to Kimberly Wallace was located in one of Glean's pockets.

In an attempt to identify the body, the officers obtained warrants to search Glean's house and car where they found additional evidence

incriminating Glean. The officers also learned that on December 12, 1990, Glean had reserved two planes (both Cessna 172s), one in Athens and the other in Winder, from a company named Roman Air. Glean had reserved the planes for three consecutive nights under the assumed name of A. T. Byrdman, Jr. At each airport, Glean had requested that the rear seat of the plane be removed to accommodate a large package, and stated that he would arrive to rent the plane late at night. The Athens airport was suspicious of the rental and contacted the police, who established a surveillance of the plane. However, Glean never went to the Athens airport, but instead rented the plane he had reserved in Winder. Glean also had attempted to reserve the same type plane for the same nights at the Peachtree-DeKalb airport, but that airport refused his request.

At the time of his arrest, Glean was the attorney for Jack Wallace, a co-defendant, in a pending divorce action against Kimberly Wallace. Kimberly Wallace was seeking alimony and an equitable division of marital property worth approximately two million dollars. On November 29, 1990, Glean had contacted Kimberly Wallace's attorney and requested that Kimberly not bring her father with her when she went to pick up her alimony checks. In early December, Kimberly went to Jack Wallace's house alone to pick up some Christmas decorations. She did not return and was not seen alive again.

The State also introduced evidence of calls made from the mobile phone in Glean's car on December 13, 1990. This evidence showed that Glean made calls to the Okefenokee Swamp Park at 9:55 a.m.; to Peachtree Flights in Chamblee at 10:06 a.m.; to the Wallace Health Clinic (the office of Jack Wallace) at 12:30 p.m.; to the residence of Jack Wallace at 1:35 p.m.; to Roman Air at the Winder airport at 3:56 p.m.; to Clarke Flying Service in Athens at 3:57 p.m; to the Wallace Health Clinic at 3:59 p.m.; and to the Atlanta Flight Service in Roswell at 8:27 p.m.

1. Glean contends that the evidence is insufficient to support his conviction. We disagree. Viewing the foregoing evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Glean guilty of murder beyond a reasonable doubt.[3]

2. Moreover, for numerous reasons, we conclude that Glean's remaining contentions are without merit.

(a) First, to the extent that Glean's first, second, and third enumerations of error raise issues regarding the searches and seizures at issue in this case, we conclude that those issues are without merit, and that the trial court therefore did not err in denying Glean's motion to suppress. Moreover, although Glean's fourth enu-

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

meration of error raises only search and seizure issues, he expands on the enumeration by raising numerous unrelated issues, such as that a pathologist was not properly qualified as an expert. These issues are either procedurally barred because Glean did not properly enumerate them as error[4] or failed to raise the issues at trial, or they are without merit. As for the motions for mistrial that Glean contends should have been granted, we decline to interfere with the trial court's discretion in denying those motions, as it is not "apparent that a mistrial is essential to the preservation of the right to a fair trial."[5]

(b) In his second enumeration of error, Glean contends that OCGA § 17-4-20 is unconstitutionally vague and overbroad in permitting a warrantless arrest "if there is likely to be failure of justice for want of a judicial officer to issue a warrant." Glean, however, did not raise the unconstitutionality of OCGA § 17-4-20 until his second amended motion for a new trial, and thus did not raise the issue in a timely manner. He therefore is barred from raising the issue on appeal.[6] Moreover, even if Glean had properly raised this issue, this Court has already ruled that a warrantless arrest may be made under § 17-4-20 only when the probable cause necessary for a constitutional arrest under the federal constitution is present.[7] The statute, as construed, is thus constitutional. Finally, both the trial court and this Court have applied the federal constitutional standard of probable cause to Glean's seizure and arrest. Therefore, even if § 17-4-20 were unconstitutional, that fact would be of no avail to Glean.

(c) Glean's trial was originally scheduled to be tried in Ware County. Glean filed a motion for change of venue, contending that an impartial jury could not be picked in Ware County. The trial court granted the motion, and informed defense counsel that the jury would be selected in Chatham County and returned to Ware County for trial. The trial court relied on then-existing Uniform Superior Court Rule 19.2 (B) for its decision to try the case in Ware County. In his fifth enumeration of error, Glean contends that the trial court erred by selecting a jury in Chatham County and returning it to Ware County for trial.

Glean's case was tried in May 1992. At that time, USCR 19.2 (B) provided that when a trial court granted a change of venue, it had to select the jurors in "the transferee county (here, Chatham County),"

---

[4] *Standard Guaranty Ins. Co. v. Bundrage*, 264 Ga. 632, 633 (452 SE2d 474) (1994).

[5] *Cowards v. State*, 266 Ga. 191, 194 (465 SE2d 677) (1996) (mistrial should be granted when necessary to preserve right to fair trial).

[6] See *Spencer v. State*, 260 Ga. 640, 642 (1) (e) (398 SE2d 179) (1990); *Howard v. State*, 251 Ga. 586, 589 (7) (308 SE2d 167) (1983).

[7] *Durden v. State*, 250 Ga. 325, 326-327 (1) (297 SE2d 237) (1982).

but could hold the trial "in the transferor county (here, Ware County)."[8] In 1994, however, this Court held that, "because USCR 19.2 (B) conflicts with OCGA § 17-7-150 (a), a trial court may not return jurors from the county of venue to the original county for trial," absent the consent of the parties.[9] Because the record does not reflect that Glean gave his consent to the trial court's decision in this case, the trial court committed error in conducting the trial in Ware County. However, we have also held that a defendant must object to a trial court's erroneous reliance on USCR 19.2 (B) to preserve the error for review.[10] Because our review of the record demonstrates that Glean did not object to conducting the trial in Ware County with the Chatham County jury, he is barred from raising this issue on appeal.[11] Moreover, Glean has also "failed to establish that the trial court's error harmed him."[12]

(d) In his sixth enumeration of error, Glean contends that the trial court erroneously instructed the jury in numerous different ways. After reviewing the transcript, however, we conclude that the court's charge was not erroneous for any of the reasons alleged by Glean.

(e) In his seventh enumeration of error, Glean contends not only that the evidence is insufficient to support his conviction,[13] but also (1) that the trial court erred by failing to grant the motion for mistrial that Glean made after learning that the trial court had permitted jurors to have visitation with their families following the guilty verdict but before the sentencing phase had begun, and (2) that the trial court erred by failing to grant a motion to recuse allegedly made by the defense. As for the motion for mistrial, the record shows that the trial court reserved ruling on it after a hearing; that the court never made a ruling on the motion; and that Glean's lawyers did not seek to invoke a ruling from the court after the court stated that it was reserving its ruling. For this reason, Glean is procedurally barred from raising the issue.[14] Further, even assuming the issue is properly presented for our review, we conclude that no harm resulted to Glean, because the visitation occurred after the guilty verdict but before the sentencing phase and Glean received a life sentence.[15]

---

[8] See *Hardwick v. State*, 264 Ga. 161, 164 (2) (442 SE2d 236) (1994).

[9] *Hardwick*, 264 Ga. at 162-163, 164-165. USCR 19.2 has been amended to comply with the *Hardwick* decision.

[10] *Mobley v. State*, 265 Ga. 292, 297-298 (12) (455 SE2d 61) (1995).

[11] Id.

[12] Id. at 298.

[13] See Division 1 of this opinion.

[14] *Medlock v. State*, 264 Ga. 697, 698 (449 SE2d 596) (1994) (failure to invoke ruling on motion results in waiver for purposes of appeal).

[15] See *Cook v. State*, 242 Ga. 657, 658-659 (251 SE2d 230) (1978).

Finally, the record does not demonstrate that Glean made a motion to recuse the trial court. The contention that the trial court erred in failing to grant such a motion is therefore without merit.

(f) In his eighth enumeration of error, Glean contends that for each of the reasons given in his first seven enumerations of error, his constitutional rights were violated. Having addressed the issues raised by the first seven enumerations of error, the eighth enumeration raises nothing for our review.

*Judgment affirmed. All the Justices concur. Carley, J., disqualified.*

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 28, 1997.

Michael A. Glean, *pro se.*

*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.