[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 4, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-13980

_____

D. C. Docket No. 99-00023-2-CV-RLV

STEPHEN A. MOBLEY,

                                        Petitioner-Appellant,

          versus

FREDERICK J. HEAD, Warden,
Georgia Diagnostic and
Classification Center,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 4, 2001)**

Before TJOFLAT, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

Stephen A. Mobley appeals the district court's denial of his petition for a writ of habeas corpus. Two issues were certified to us on appeal from the district court's denial of habeas corpus relief: (1) whether Mobley was denied effective assistance of counsel through his attorney's use of a "genetic deficiency" defense, and (2) whether Mobley was denied due process and effective assistance of counsel because the Georgia Supreme Court's opinion in Sabel v. State, 282 S.E.2d 61 (Ga. 1981), requiring the defense to turn over all expert opinions, including those that the defense does not intend to use at trial, had a chilling effect on his counsel that prevented him from retaining experts to develop mitigating psychiatric testimony. Because we find that the Georgia Supreme Court reasonably applied the relevant law to determine that Mobley had received effective assistance of counsel at his trial and his due process claim is procedurally barred, we AFFIRM.

## I. BACKGROUND

In early 1991, Mobley stole a Walther .380 pistol from a car belonging to an acquaintance. On 17 February 1991, John Collins was working as the night manager at a Domino's Pizza franchise in Hall County, Georgia, when Mobley entered the store and robbed him at gunpoint. After emptying the cash register, Mobley moved Collins from the front of the store to the back office, took

2

additional money from the office and then shot Collins in the back of the head before fleeing out a side door.

Mobley subsequently committed six additional armed robberies of various restaurants and drycleaners over a period of three weeks. He was apprehended after a high-speed chase as he fled the scene of an attempted armed robbery. Once in custody, Mobley confessed to the robberies and the murder of Collins. A Walther .380 found on the side of the road along the chase route matched the ballistics of the murder weapon.

Mobley was indicted for malice murder, felony murder, armed robbery, aggravated assault and possession of a firearm during the commission of a crime. Daniel Summer and Andrew Maddox were assigned by the court to defend Mobley. His first trial ended in a mistrial. Following an interim appeal on several issues, Mobley was tried a second time. Summer was also lead counsel for Mobley's second trial, but Charles Taylor replaced Maddox as Summer's co-counsel.

In bifurcated proceedings, the jury returned a verdict of guilty on charges of malice murder, felony murder, armed robbery, aggravated assault and possession of a firearm during commission of a crime. At the sentencing phase of his trial, evidence was introduced that, while in pre-trial detention, Mobley sexually

assaulted another inmate on two occasions. Evidence at the sentencing phase also included testimony that Mobley tattooed the word "domino" on his shoulder, hung a Domino's pizza box lid on his cell wall and threatened a guard by saying he looked more and more like a Domino's delivery boy every day.

In their mitigation presentation, Summer and Taylor called Mobley's father, Charles Mobley, to testify. Ex. 12, Vol. X, at 2540. After relaying a brief history of the schools and institutions to which he sent Mobley as a child, Charles Mobley asked for mercy for his son. Id. at 2551. Counsel also called Doctor J. Stephen Ziegler, the psychologist who treated Mobley at the last facility where he was treated before reaching his eighteenth birthday. Id. at 2564. Ziegler testified that, at age 16, Mobley had a conduct disorder which is the equivalent of an adult antisocial personality disorder, and that persons with this disorder can become less violent and antisocial with age. Id. at 2598-99. Counsel also called Mobley's aunt, Joyce Ann Childers, who was the family historian. Ex. 12, Vol. XI, at 2683. Childers testified about a family history over several generations of violent behavior, alcoholism, abuse and other antisocial behavior among male and female members of the Mobley family tree. Id. at 2685-2710. Counsel also introduced evidence that, since his arrest, Mobley had attempted several times to plead guilty to all charges against him in exchange for a life sentence.

4

At the conclusion of the sentencing phase of the trial, the jury recommended a sentence of death. Mobley raised several enumerations of error on appeal, but his conviction was affirmed.[1] See Mobley v. State, 455 S.E.2d 61 (Ga. 1995). Mobley filed a writ of habeas corpus with the Superior Court of Butts County, Georgia. At the habeas hearing, Mobley presented testimony from two mental health experts, psychiatrist Michael Gomez and psychologist Hugh Anthony Semone. Ex. 26, Vol. I, at 29, 87. Based on his interview with Mobley and a review of Mobley's records, Doctor Gomez concluded that Mobley's antisocial personality disorder was the result of his childhood environment, including abuse, neglect and inconsistent punishment. Id. at 38, 43-44. Doctor Semone also interviewed Mobley and other family members including Mobley's maternal grandmother. Id. at 101, 106. He also concluded that Mobley's "dysfunctional and disorganized and punitive" family structure was the most significant factor in Mobley's violent behavior pattern. Id. at 171. Mobley's grandmother, Mary Walraven, testified that her daughter was verbally and emotionally abusive to Mobley. Id. at 243-47. The Superior Court upheld the conviction but vacated Mobley's sentence on the grounds that Mobley was denied effective assistance of counsel for two main

---

[1]A detailed discussion of the history of the case is not necessary here. Further details are set forth in the Georgia Supreme Court's opinion affirming his conviction and sentence on direct appeal. See Mobley v. State, 455 S.E.2d 61, 65, n. 1 (Ga. 1995).

reasons: (1) his counsel presented a genetic defect theory to explain Mobley's violent and anti-social behavior without the assistance of an expert; and (2) his counsel failed to present other mitigating psychiatric evidence. Ex. 27, at 27-32.

The Georgia Supreme Court reversed and reinstated Mobley's death sentence. See Turpin v. Mobley, 502 S.E.2d 458, 461 (Ga. 1998). Reviewing the lower court's findings and the evidence produced at the habeas hearing, the court found that Mobley's counsel had conducted an extensive investigation, interviewed several witnesses, and obtained all available records from every school and treatment facility Mobley attended. Id. at 463-64. The court noted that, when interviewed by counsel in preparation for trial, Mobley denied that he had ever been abused or neglected, as did his parents and sister. Id. Based on the evidence developed by counsel, the court concluded that the sentencing phase strategy was reasonable, and, accordingly, denied Mobley's ineffective assistance claim. The court also found that Mobley's claim regarding the Sabel order was barred because that issue was addressed and rejected on direct appeal. Id. at 461-62. The federal district court also denied the writ.

## II. STANDARD OF REVIEW

Mobley's habeas petition was filed in federal district court in February 1999. Accordingly, this appeal is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), and specifically 28 U.S.C. § 2254. Because a state court initially considered the petition on the merits, we must deny the writ unless one of two exceptions applies. First, we may grant the writ if the state court rendered a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). We may also grant the writ if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at §2254(d)(2). In conducting our review, the state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. Id. at §2254(e)(1).

### III. DISCUSSION

The Georgia Supreme Court denied Mobley's petition for habeas relief on the two claims before us, finding that Mobley's due process claim was procedurally barred and his ineffective assistance claims lacked merit. The federal district court also denied the writ, finding that the Georgia Supreme Court had reasonably applied federal law. We address each issue in turn.

A. Due Process Claim

Mobley argues that he is entitled to habeas relief because his right to due process was violated by the trial court's entry of a Sabel order. At the time of

7

Mobley's trial, the Georgia Supreme Court's opinion in Sabel required that the defense turn over to the prosecution a report by every expert consulted, whether or not the defense intended to call the expert at trial. See Turpin, 502 S.E.2d at 461 (explaining effect of Sabel opinion). A Sabel order was duly entered in Mobley's case over his counsel's objection. After Mobley's trial, but prior to the filing of his direct appeal, the Georgia Supreme Court amended its position to require that the defense only turn over reports for experts it planned to use at trial. See Rower v. State, 443 S.E.2d 839, 842 (Ga. 1994).

On direct appeal, Mobley argued that this order "exceeded the permissible scope [of discovery] as outlined in Rower" and requested a new trial. Ex. 14, at 100. Mobley's assertion of error was conclusory, however, and no allegation of a chilling effect was made. The Georgia Supreme Court ruled that entry of the Sabel order was error, but that the error was harmless because "Mobley does not assert, nor does the record reflect, that Mobley was required to provide or did in fact provide the state with any scientific reports in violation of the Rower rule." Mobley, 455 S.E.2d at 66.

Mobley did not raise the chilling effect argument until he filed his habeas petition, at which time he argued that his trial counsel would have consulted a mental health expert to assist him in the sentencing phase but decided not to take

the risk of having to turn over a damaging psychiatric evaluation to the prosecutor. Ex. 24, at 8-18. The habeas court found this argument persuasive. Ex. 27, at 29. The court reasoned that the Georgia Supreme Court's analysis of the issue on direct appeal was "based on an obsolete test that was overruled after petitioner's direct appeal." Id. The court relied on a subsequent Georgia Supreme Court decision, Childress v. State, 467 S.E.2d 865, 871-72 (Ga. 1996), which recognized that a Sabel order can have a chilling effect on counsel's decision to retain an expert. The habeas court decided that the harmless error test had changed since Mobley's direct appeal and granted relief. Id.

The Georgia Supreme Court reversed. See Turpin, 502 S.E.2d at 461-62. The court noted that Mobley failed to argue on direct appeal that the Sabel order had a chilling effect. The court went on to find that, contrary to the habeas court's interpretation, "[l]ater cases did not change the harmless error test for Sabel discovery orders." Id. at 461. Furthermore, the court found that, because Mobley did not argue that the order had a chilling effect when he raised the error on direct appeal, the claim was procedurally barred. Id.

The federal district court also denied the writ, finding that the Georgia Supreme Court's ruling was a reasonable application of the law. R2-24, at 22-25.

9

The district court noted that the experts whose testimony was proffered at Mobley's habeas hearing based their opinions on disputed facts.

> Mobley's experts based much of their conclusions on their belief that Mobley was physically abused by both his parents, that he was molested or was in fear of being molested at the Anneewakee treatment facility, that his father was an alcoholic, and that his mother was cruel to him. However, Mobley's sister testified that neither her father nor her mother had ever abused Mobley. . . . The only evidence of "physical abuse" was that Mobley's parents spanked him and that his father had occasionally spanked him with a belt. Additionally, there was no evidence that Mobley was ever sexually abused at Anneewakee.

R2-24, at 24-25. Because the factual basis for the experts' testimony was disputed, the district court found that the Georgia Supreme Court's rulings were not "unreasonable" applications of law warranting habeas relief. Id.

Mobley now argues that the Georgia Supreme Court unreasonably applied federal law in denying his due process claim. However, Mobley failed to raise his chilling effect argument on direct appeal, and, accordingly, the issue is not properly before us for review. See Cobb v. Wainwright, 666 F.2d 966, 968 n.1 (5th Cir. 1982). Assuming, however, that Mobley's conclusory assertion of a due process violation on direct appeal was sufficient to preserve federal habeas review, we also conclude that any error was harmless. As discussed in Part II.B. of this opinion, infra, any failure by Mobley's counsel to retain an expert was colored by

10

Mobley's denial of any childhood abuse or trauma. We agree with the district court that no reversible error exists.

B. Ineffective Assistance Claims

Mobley also raises two ineffective assistance of counsel claims. First, he argues that the trial court's entry of the Sabel order denied him effective assistance of counsel because the chilling effect of the order prevented his attorney from consulting with experts who might have assisted in preparing mitigating evidence. Mobley also argues that his trial counsel was ineffective at the sentencing phase because he attempted to put forward a "genetic deficiency" theory to explain Mobley's behavior, but did so without the benefit of an expert in genetics.

In order to establish ineffective assistance of counsel, Mobley must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. Williams v. Taylor, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511-12 (2000) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052 (1984)). Thus, in order to obtain habeas relief, Mobley must show that the Georgia Supreme Court's application of the ineffective-assistance test was an unreasonable one. Williams, 529 U.S. at 391, 120 S. Ct. at 1512. See also § 2254.

1. The Sabel Order

11

The Georgia Supreme Court correctly found that Mobley failed to demonstrate prejudice as a result of the entry of the Sabel order.[2] The experts that Mobley presented at the habeas hearing based their testimony on their understanding that Mobley's father was an alcoholic, that his parents abused him and that his mother was cruel and controlling. This testimony was contradicted by testimony from Mobley's sister that neither parent was abusive toward him. Furthermore, when counsel originally investigated Mobley's background for possible mitigating evidence, Mobley denied that he was ever abused by his parents. Summer testified at the habeas hearing that one of the reasons he chose not to hire a mental health expert was the lack of mitigating evidence and his fear of a damaging report. In light of all of these factors, we do not find that the Georgia Supreme Court's evaluation of the claim was unreasonable or contrary to established law. Mobley's ineffective assistance claim based on the Sabel order fails.

For similar reasons, Mobley also cannot demonstrate that the Georgia Supreme Court erred in its application of the ineffective-assistance standard to

---

[2]We need not address the issue of counsel's effectiveness if prejudice is lacking. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

12

evaluate his claim regarding trial counsels' presentation of mitigating evidence. Mobley essentially argues that his trial counsel chose the wrong strategy and should not have attempted to put forward a genetic deficiency theory without the benefit of an expert in genetics. As discussed above, the Georgia Supreme Court found that

> Mobley's counsel sought to find what they called "traditional mitigation evidence." They interviewed Mobley's mother, father, and sister, all of whom reported that there was no physical or sexual abuse in Mobley's childhood. Mobley's parents also denied any birth trauma or alcohol abuse. Mobley himself denied that he had ever been physically abused, sexually abused or neglected.

Turpin, 502 S.E.2d at 463.

Mobley's counsel also obtained records from every school and institution Mobley attended and reviewed them. Id. They spoke with some of the individuals who had treated Mobley. Id. Counsel also sought court funding for genetic testing of Mobley and for an expert geneticist to assist him in preparing mitigation testimony, but it was denied by the court. See Ex. 10, at 18.

Mobley now argues that his trial counsel pursued the wrong strategy. That strategy was informed, however, by the information provided by Mobley himself. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S.

13

at 691, 104 S. Ct. at 2066. Trial counsel sought evidence that Mobley had been abused or neglected in the hopes of putting forward such information as an explanation for Mobley's apparent sociopathic tendencies. Mobley denied that he was abused or neglected. He cannot now complain that trial counsel failed to present such evidence to the jury.

Nor can Mobley successfully challenge trial counsels' ultimate decision to proceed with a genetic defense. Faced with almost no mitigating evidence, counsel attempted to put forward a genetic explanation based on evidence of a family history of violent temperaments and abusive behavior. Counsel did not use a genetic expert because he was denied funding for one. Our inquiry is limited to whether counsel's strategic decisions were reasonable ones at the time they were made. Chandler v. United States, 218 F.3d 1305, 1315 n. 16, 1318 (11th Cir. 2000) (en banc). Given that trial counsel had almost no other mitigating evidence to work with, we cannot say that it was unreasonable to pursue the genetic deficiency theory that counsel presented to the jury. This ineffective assistance claim fails.

### III. CONCLUSION

Because the Georgia Supreme Court's decision did not involve an unreasonable application of, or a decision contrary to, federal law, we AFFIRM the denial of the writ of habeas corpus by the federal district court.

14