Stephen A. MOBLEY, Petitioner–
Appellant,

v.

Frederick HEAD, Warden, Georgia
Diagnostic and Classification
Prison, Respondent–Appellee.

No. 02–14224.

United States Court of Appeals,
Eleventh Circuit.

Sept. 18, 2002.

Brian Steel, The Steel Law Firm, P.C., Atlanta, GA, for Petitioner–Appellant.

Allison Attaway Burton, State of Georgia Law Dept., Atlanta, GA, for Respondent–Appellee.

Before TJOFLAT, BARKETT and WILSON, Circuit Judges.

BARKETT, Circuit Judge:

■ Having determined that the Supreme Court's forthcoming decision in *Abdur'Raham v. Bell*, —— U.S. ——, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002) (granting certiorari to consider whether every Rule 60(b) motion constitutes a prohibited "second or successive" habeas petition as a matter of law), will determine our resolution of the issues Mobley raises in this appeal, we hereby stay Mobley's execution pending a decision in that case or until further order of this Court or the Supreme Court. Because the dissent fully describes the factual and procedural background of this case, we write only to explain our disagreement.

Unlike the dissent, we believe that the district court fairly read *Felker v. Turpin*, 101 F.3d 657 (11th Cir.1996), to have established a bright-line rule that the restrictions in 28 U.S.C. § 2244(b) for "second or successive" petitions apply to *all* Rule 60(b) motions filed by habeas corpus petitioners. *See Felker*, 101 F.3d at 661 ("We hold that the successive petition restrictions contained in the amendments to § 2244(b) apply to Rule 60(b) proceedings,

even where those proceedings seek to amend a judgement that became final before the effective date of the amendments."); *In re Medina,* 109 F.3d 1556, 1561 (11th Cir.1997) ("We held in *Felker* that the second and successive petition restrictions of amended § 2244(b) apply to Rule 60(b) motions."). That is the same unequivocal rule that the Supreme Court has granted certiorari to review in *Abdur'Raham,* and we believe the outcome in that case will determine the outcome here.

The dissent apparently believes, notwithstanding *Felker* and *Medina,* that Mobley's 60(b) motion is *not* subject to § 2244(b)'s restrictions. Assuming *arguendo* that the dissent is correct on that score, we believe that our precedent squarely precludes us from affirming the district court. Mobley has clearly alleged that the State's actions regarding Fuller's testimony created infirmities in his federal habeas hearing, not just in the state proceedings. In his 60(b) motion, Mobley claims that recently discovered evidence demonstrates that the district court's prior resolution of his habeas claim was tainted because it was based upon facts (regarding Fuller's prior testimony) that the State knew or should have known were false. Mobley argues that, because of these "extraordinary circumstances," the district court should have exercised its discretion under Rule 60(b) to grant him relief from the judgment denying his request for habeas relief.[1]

■ The district court denied Mobley's motion because of what it perceived to be *Felker*'s absolute rule. This Court reviews a denial of a 60(b) motion for abuse of discretion. *See Booker v. Singletary,* 90 F.3d 440, 442 (11th Cir.1996). As we have

explained previously, under that standard of review,

A discretionary decision that falls within permitted bounds, but is based on false premises, raises the question on review as to whether the trial court would have come to the same conclusion using proper premises. That it could have does not satisfy the inquiry as to whether it would have reached the same result. The affirmance of a discretionary decision that is based on an improper view of the facts or the law merely reflects the appellate court's exercise of discretion that rightfully belongs to the trial court. The proper role of appellate review permits a remand for further proceedings when a discretionary decision has been made on false premises.

*Collins v. Seaboard C.R. Co.,* 681 F.2d 1333, 1335 (11th Cir.1982). Therefore, if the dissent were right that the district court misread *Felker,* then under *Collins* we would be required to remand; we would not be free to affirm by substituting for the district court's discretion our conjecture that it would have reached the same result had it been guided by a proper view of the law. Of course, we believe the district court correctly interpreted *Felker,* but recognizing that the Supreme Court has granted certiorari on the same issue in *Abdur'Rahman,* we find it appropriate to issue a stay pending a decision in that case.

Appellant Stephen A. Mobley's Stay of Execution is GRANTED.

TJOFLAT, Circuit Judge, dissenting:

Before the court are three last-minute petitions filed by inmate Steven Anthony

---

1. We disagree with the dissent that the language of Mobley's motion is restricted to Rule 60(b)(3). Mobley has not limited his motion to that enumerated ground. The district court would also have discretion to reopen under 60(b)(2) ("newly discovered evidence") or 60(b)(6) ("any other reason justifying relief from the operation of the judgment").

Mobley, who was sentenced to death for killing John Collins, a Domino's Pizza employee, during an armed robbery of a Domino's Pizza store on February 17, 1991: (1) an "Application for Permission to File a Successive Petition for Writ of Habeas Corpus;" (2) an "Application for Certificate of Appealability [from an order of the United States District Court for the Northern District of Georgia denying his Motion for Stay of Execution and for Relief from Judgment Pursuant to Fed. R.Civ.P. 60(b) ] and Motion for Stay of Execution;" and (3) a "Motion to Recall the Mandate in Case 00–13980[, *Mobley v. Head*, 267 F.3d 1312 (11th Cir.2001) ]." The panel believes that the Supreme Court's forthcoming decision in *Abdur'Rahman v. Bell*, —— U.S. ——, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002) will affect the resolution of the issues Mobley raises in these filings, because the Court's decision in *Abdur'Rahman* will determine whether Mobley's Rule 60(b) motion should be reviewed under that Federal Rule of Civil Procedure or, instead, should be considered to be a "second or successive" petition for writ of habeas corpus, supposedly in accordance with our previous decision in *Felker v. Turpin*, 101 F.3d 657 (11th Cir.1996). Consequently, the panel has chosen to postpone consideration of Mobley's filings—and stay his execution—until the Court decides *Abdur'Rahman*. Respectfully, I must dissent from this decision because I believe that *Felker* is inapplicable to the case at hand, and, thus, there is no need for us to postpone the administration of Mobley's death sentence.

## I.

Mobley's petitions are premised on what transpired at the sentencing phase of his trial in the Superior Court of Hall County, Georgia. During the sentencing phase, Mobley introduced evidence that he had offered to plead guilty in exchange for any punishment other than the death penalty.[1] In rebuttal, the prosecution called Judge Andrew Fuller. Though he was a superior court judge at the time of Mobley's trial, Fuller had been district attorney at the onset of the prosecution and had made the decision to seek the death penalty against Mobley.[2]

Fuller testified that he decided to seek the death penalty "once [he] knew what had occurred" with regard to the actual circumstances of the crime. Among the factors Fuller considered were that it was "a well planned armed robbery," that Mobley "used [his] pistol immediately for the purpose of accomplishing the taking of money," and that Collins, after seeing Mobley's face, had been marched to a back room, forced to kneel, and then shot in the back of the head. Fuller said that he was particularly troubled by the fact that Mobley "wasn't concerned about the shooting so much as he grabbed a bag to put his getaway money in before he exited the building."

---

1. Mobley's failed plea offer was one of only three pieces of mitigating evidence that he introduced at the sentencing phase of his trial. Mobley also called his father, who plead for mercy for his son, and an expert witness, who testified that Mobley suffered from an antisocial personality disorder which may mellow as he ages.

2. Mobley was actually tried twice. The first trial ended in a mistrial. At the commencement of the second trial—at which Mobley's death sentence was ultimately imposed—Mobley tried to plead double jeopardy, but his claim was rejected by the Georgia Supreme Court. *See Mobley v. State*, 262 Ga. 808, 426 S.E.2d 150 (Ga.1993). Fuller's testimony was presented during the sentencing phase of Mobley's second trial.

Fuller also added that he had consulted the Collins family, and they "supported" his decision to seek the death penalty. He emphasized, however, that they "never put anything that [he] would even associate with pressure on [him]," telling him, "It is your decision, we put our trust in you." In fact, the family's feelings only factored as "a small percentage" in the decision to seek the death penalty; instead, "95 percent of the decision [was] made based on the evidence [he saw] that describe[d] and define[d] the defendant for [him]."

Despite his initial impressions, Fuller asserted that he nonetheless tried to remain "open minded ... because of the simple gravity of the decision," when Mobley's counsel approached him about a plea offer. According to Fuller, other factors reinforced his decision, though. Specifically, Fuller recounted how Mobley had joked about getting a job at Domino's "because he knew there was a vacancy," had gotten a Domino's tattoo on his back, had raped his cellmate, and had told a prison deputy, as a way of threatening him, that he was "looking more and more like a Domino's Pizza delivery boy every day." These events led Fuller to believe "that [he] had made the right decision" in seeking the death penalty, as he saw in Mobley "nothing but pure unadulterated meanness."

As noted, Mobley was sentenced to death. On direct appeal, the Georgia Supreme Court affirmed his capital conviction and death sentence. *See Mobley v. State*, 265 Ga. 292, 455 S.E.2d 61 (Ga.1995). Mobley then sought habeas corpus relief in state and federal court. His petitions were ultimately denied. *See Mobley v. Head*, 267 F.3d 1312 (11th Cir.2001); *Turpin v. Mobley*, 269 Ga. 635, 502 S.E.2d 458 (Ga.1998).

On July 12, 2002—less than a month before the date on which Mobley was scheduled to be executed—Nina Collins, the victim's mother, apparently contacted Mobley's father to tell him that she had decided to oppose Mobley's execution. On July 16, Mobley filed an "Extraordinary Motion for New Trial as to Sentence" in the Superior Court of Hall County, Georgia. His motion asserted that, if his death sentence were vacated and he were afforded a new sentencing trial, Mrs. Collins would testify that her family only acquiesced to Fuller's decision to seek the death penalty because Fuller had not told them that a sentence of life without parole was an available option in the case. On July 19, the superior court denied Mobley's motion. The court found that the evidence Mobley wished to present at a new sentencing hearing would be admissible, but that even if the testimony were presented to a jury, "it [could] not reasonably be concluded that the opposition of the victim's family to the death penalty ... would probably produce a different verdict." Mobley applied to the Georgia Supreme Court for a discretionary appeal of the denial of his motion, but his application was denied.

On August 2, Mobley shifted his efforts to the federal court system and filed a "Motion for Stay of Execution and for Relief from Judgment Pursuant to Fed. R.Civ.P. 60(b)" with the United States District Court for the Northern District of Georgia. The district court denied this motion on August 3, finding that Mobley had not met the conditions of 28 U.S.C. § 2244(b), which, it said, were applicable under *Felker v. Turpin*, 101 F.3d 657 (11th Cir.1996), to Rule 60(b) motions filed with regard to habeas corpus petitions. Consequently, Mobley turned to us for relief by filing an "Application for Certificate of Appealability" from the district court's order, an "Application for Permission to File a Successive Petition for Writ of Habeas Corpus," and a "Motion to Recall the Man-

date in Case No. 00–13980." Mobley's "Motion to Recall the Mandate in Case No. 00–13980" asks us to grant him direct relief, specifically by revoking our previous affirmance of the district court's denial of his habeas corpus petition. In contrast, in his "Application for Certificate of Appealability" and "Application for Permission to File a Successive Petition for Writ of Habeas Corpus," Mobley wants us to allow him to seek relief from the district court, namely by letting it reconsider his habeas corpus petition in light of his claim that Fuller misled the jury through his testimony that the Collins' family supported Mobley's execution; both filings essentially seek the same result, albeit through two separate procedural mechanisms.

## II.

As one vehicle for his claims, Mobley has filed an application pursuant to 28 U.S.C. § 2244(b)(3)(A), as amended by § 106 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), seeking an order authorizing the district court to consider a "second or successive" petition for a writ of habeas corpus. Such authorization may be granted if:

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

In his application, Mobley has met neither of these two criteria. His claim that his death sentence was unconstitutionally imposed because the state knowingly presented Fuller's false testimony during sentencing is not based upon a new rule of constitutional law. Likewise, Mobley has neither shown that he could not have discovered the facts underlying his claim—namely, Fuller's misrepresentations to the Collins—through the exercise of due diligence, nor proven that, had the jury known about Fuller's alleged misrepresentation to the Collins' family, it would not have sentenced him to death. Therefore, without a prima facie showing of either of these grounds, Mobley's application under § 2244(b)(2) fails.

## III.

### A.

In addition to filing an "Application for Permission to File a Successive Petition for Writ of Habeas Corpus," Mobley filed an "Application for Certificate of Appealability" from the district court's denial of his Rule 60(b) motion. As aforementioned, Mobley seeks the same relief in his Certificate of Appealability—district court review of his sentence in light of Fuller's alleged misrepresentations—as in his application for a "second or successive" habeas corpus petition. There is a difference, however, between a Rule 60(b) motion and a "second or successive" habeas corpus petition. The distinction lies in the harm each is designed to cure. A "second or successive" habeas corpus petition, as discussed above, is meant to address two specific types of constitutional claims by prisoners: (1) claims that "rel[y] on a new rule of constitutional law," and (2) claims that rely

on a rule of constitutional law and are based on evidence that "could not have been discovered previously through the exercise of due diligence" and would establish the petitioner's factual innocence. 28 U.S.C. § 2244(b)(3)(A). Neither of these types of claims challenges the district court's previous denial of relief under 28 U.S.C. § 2254. Instead, each alleges that the contextual circumstances of the proceeding have changed so much that the petitioner's conviction or sentence now runs afoul of the Constitution.

In contrast, a motion for relief under Rule 60 of the Federal Rules of Civil Procedure contests the integrity of the proceeding that resulted in the district court's judgment. Rule 60(b) states:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

> (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). When a habeas corpus petitioner moves for relief under, for example, Rule 60(b)(3), he is impugning the integrity of the district court's judgment rejecting his petition on the ground that the State obtained the judgment by fraud. Asserting this claim is quite different from contending, as the petitioner would in a successive habeas corpus petition, that his conviction or sentence was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In sum, a "second or successive" habeas corpus petition, like all habeas corpus petitions, is meant to remedy constitutional violations (albeit ones which arise out of facts discovered or laws evolved after an initial habeas corpus proceeding), while a Rule 60(b) motion is designed to cure procedural violations in an earlier proceeding—here, a habeas corpus proceeding—that raise questions about that proceeding's integrity. This distinction identifies these two types of filings—no matter how either is styled. In other words, if a petitioner, who already has been denied federal habeas corpus relief files a motion that presents new constitutional claims to the district court, this motion should be considered a "second or successive" habeas corpus petition—even if the petitioner calls it a Rule 60(b) motion[3]. Likewise, if the petitioner sought a "second or successive" habeas corpus petition to raise questions about the integrity of a prior habeas corpus proceeding—perhaps suggesting that the prior proceeding was rife with fraud—

---

**3.** Utilizing this approach is especially important when dealing with motions made under Federal Rule of Civil Procedure 60(b)(6). See Fed.R.Civ.P. 60(b)(6) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the

following reasons: ... (6) any other reason justifying relief from the operation of the judgment."). A district court that uses this "catch-all" provision to allow a habeas corpus petitioner to obtain review of a new constitutional claim will, in my view, eviscerate the provisions of AEDPA.

then the court should review the filing under the standards for Rule 60(b) motions and not under the strictures of 28 U.S.C. 2244(b)(2).[4]

This approach is in no way inconsistent with our holding in *Felker v. Turpin*, 101 F.3d 657 (11th Cir.1996). In that case, a death row inmate filed a last-minute motion under Rule 60(b)(1), (2), (3), and (6) based on evidence he discovered through a lawsuit brought under the Georgia Open Records Act, Ga Code Ann. § 50–18–70 to –76 (1994). In our review of the district court's denial of Felker's motion, we specifically noted that "[a]ll of the claims that Felker raises are *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claims." *Felker*, 101 F.3d at 662. In other words, Felker was trying to use Rule 60(b) as a vehicle for asserting constitutional claims that should have been conveyed in a habeas corpus petition. Not surprisingly, we held that "because Felker's Rule 60(b) proceeding was due to be treated as a second or successive habeas corpus application, and because he failed to move ... for an order authorizing the district court to consider that application, as he was required to do by § 2244(b)(3)(A), the district court's denial of his motion was entirely proper." *Id.* at 661.

In the instant case, the district court and presumably my colleagues on this panel read *Felker* differently, however. They believe that *Felker* stands for the proposition that the restrictions in 28 U.S.C. § 2244(b) for "second or successive" petitions apply to *all* Rule 60(b) motions filed by habeas corpus petitioners. A close study of the text of *Felker* presents at least two separate reasons why this interpretation is inaccurate. First, it belies the

facts of the case, which only dealt with the use of Rule 60(b) to amend a previous habeas corpus petition to allege other constitutional violations. Any decision by the *Felker* panel regarding Rule 60(b) motions that do not allege constitutional claims must be considered mere dicta. Second, the wording of *Felker* suggests that the panel did not intend to adopt a universal rule about Rule 60(b) motions filed by habeas corpus petitioners; even though the panel said "that the successive petition restrictions contained in the amendments to § 2244(b) apply to Rule 60(b) proceedings," *id.*, it based this seemingly conclusive statement on the notion that "Rule 60(b) cannot be used to circumvent restraints on successive habeas petitions," *Id.* Therefore, *Felker* left open for later review the scenario where a Rule 60(b) motion filed by a habeas corpus petitioner is not meant to circumvent 28 U.S.C. § 2244(b), but instead seeks the particular relief which that Federal Rule of Civil Procedure specifically provides.

Moreover, the Eleventh Circuit cases *Felker* cites and presumably falls in line with—*Scott v. Singletary*, 38 F.3d 1547 (11th Cir.1994); *Lindsey v. Thigpen*, 875 F.2d 1509 (11th Cir.1989); and *Booker v. Dugger*, 825 F.2d 281 (11th Cir.1987)—provide no support for the concept that all Rule 60(b) motions should be viewed as 28 U.S.C. § 2244(b) petitions. Both *Scott* and *Lindsey* dealt with situations where habeas corpus petitioners asserted constitutional violations in Rule 60(b)(6) motions, so they are inapplicable to cases where petitioners do not use misuse Rule 60(b) in this way. *See Scott*, 38 F.3d at 1550 ("The gravamen of Scott's Rule 60(b)(6) motion and his motion to recall the mandate is that our earlier decision in *Scott v. Dugger*,

4. Obviously, because the standard of review for a "second or successive" habeas corpus petition is so much more stringent than that for a Rule 60(b) motion, a petitioner is more likely to file the former in the guise of the latter than vice versa.

891 F.2d 800 (11th Cir.1989), affirming the district court's denial of his petition for writ of habeas corpus, 'erroneously found no merit to [his] claim that [Florida's] "heinous, atrocious or cruel" aggravating circumstance was applied in an overbroad and vague manner when the penalty phase jury did not receive adequate guidance regarding a narrowing construction.'") (alteration in original); *Lindsey*, 875 F.2d at 1511 (considering a motion under Rule 60(b)(6) based on two constitutional claims, "first, that the trial court's consideration of Alabama's 'especially heinous, atrocious or cruel' statutory aggravating factor in fixing his sentence violated the eighth amendment as interpreted by the Supreme Court in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) [and] second, that the trial court's consideration of statutory aggravating factors not found by the jury violated the sixth amendment as interpreted by the Ninth Circuit in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988) (in banc)...."). *Booker*, in contrast, did address a situation somewhat similar to the one at hand; a death row inmate contended that perjured testimony during a previous habeas proceeding—albeit by the inmate's former

lawyer regarding claims of ineffective assistance of counsel—represented fraud upon the district court in violation of Rule 60(b). *See Booker*, 825 F.2d at 282. Accordingly, the panel, in denying the motion, focused on the fact that Booker could not show that any such fraud occurred and did not consider whether the motion met the standards of 28 U.S.C. § 2254.[5] *See id.* at 283–85. Hence, Eleventh Circuit jurisprudence, from *Booker* to *Felker*, has established the proposition that a Rule 60(b) motion filed by a habeas corpus petitioner should be considered to be a "second or successive" petition if—*and only if*—the motion asserts a claim that more properly should be raised in a habeas corpus petition, i.e., a constitutional violation.[6]

This rule corresponds with the Supreme Court's recent grant of certiorari in *Abdur'Rahman v. Bell*, —— U.S. ——, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002). In *Abdur'Rahman*, the Sixth Circuit, in an unpublished order,[7] rejected a habeas corpus petitioner's Rule 60(b) motion, because it did not satisfy the criteria listed in 28 U.S.C. § 2244(b)(2) for a "second or successive" habeas corpus petition. In doing so, the Sixth Circuit explicitly relied on a

---

**5.** *Felker* quotes the following statement from *Booker*: "We also note that the requirements of federal habeas corpus, including the abuse of the writ standard applied to successive writs, Rule 9(b), 28 U.S.C. § 2254, may properly be superimposed on this independent action [filed under Rule 60(b)]." *Booker*, 825 F.2d at 284 n. 7, *as quoted in Felker*, 101 F.3d at 661. This passing comment was a footnote in Booker and is clearly dicta, as it had no role in how the case was decided.

**6.** As my colleagues note, in a later case, *In re Medina*, 109 F.3d 1556 (11th Cir.1997), we stated that "[w]e held in *Felker* that the second and successive petition restrictions of amended § 2244(b) apply to Rule 60(b) motions." *Id.* at 1561. *Medina* adds little insight to the holding of *Felker*, as it based its reliance on *Felker* simply on the fact that

"[t]he prisoner in *Felker* ... was identically situated in all material respects with Medina." *Id.* at 1561. Like Felker, Medina tried to use Rule 60(b) to raise a new constitutional claim, specifically that he was incompetent to be executed. The case at hand is different from both *Felker* and *Medina* because, here, the prisoner is not trying to use Rule 60(b) to assert a constitutional claim.

**7.** As indicated in Abdur'Rahman's brief in support of his petition for a writ of certiorari, the two judgments of the Sixth Circuit for which he sought review are "embodied in a single unpublished Order incorporating a prior unpublished order." Moreover the district court orders that those judgments address are also unpublished. Therefore, the facts of the case were derived from Abdur'Rahman's brief itself.

previous decision, *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir.1996), which had held that "a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition." *Id.* at 1335.

The facts of *McQueen*, in which the Supreme Court declined certiorari review, *McQueen v. Parker*, 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997), were different from those in *Abdur'Rahman*, however. In *McQueen*, the petitioner used a Rule 60(b) motion to raise "broad allegations of constitutional violations," which were "never included in the initial petition." *Id.* Because McQueen was essentially seeking a "second or successive" habeas corpus petition, the Sixth circuit chose to review McQueen's Rule 60(b) motion for abuse of the writ. *See id.* ("[O]nce it is determined that a Rule 60(b) motion is the practical equivalent of a successive habeas petition, the issue is whether McQueen has met his cause and prejudice burden."). By contrast, in *Abdur'Rahman*, the petitioner was not trying to use Rule 60(b) to assert constitutional violations. Instead, he wanted the district court to reconsider its denial of his habeas corpus petition in light of a new Tennessee Supreme Court procedural rule that was supposed to be applied retroactively.[8] Therefore, Abdur'Rahman was not using Rule 60(b), incorrectly, as the practical equivalent of a "second or successive" habeas corpus petition but, properly, to seek relief because the "prior judgment upon which [the district court's decision] [wa]s based ha[d] been reversed or otherwise vacated." Fed.R.Civ.P. 60(b)(5). By granting certiorari in *Abdur'Rahman*, the Supreme Court has intimated the rule I suggest today—that a Rule 60(b) motion should only be considered a "second or successive" habeas corpus petition if the former seeks to assert constitutional violations and thus is the "practical equivalent" of the latter.

As a final note, I would add that this rule is not just consistent with case law, but it also comports with the fair and equitable administration of justice. If, for example, a death row inmate could show that the State indeed committed fraud upon the district court during his habeas

**8.** According to Abdur'Rahman's brief, *see supra* note 7, the district court refused to consider the merits of many of the claims he presented in his petition for writ of habeas corpus because, although he had presented these claims to the Tennessee Court of Appeals, he had failed to present them in an application for discretionary review to the Tennessee Supreme Court. The district court concluded that Adbur'Rahman had "failed to exhaust" these claims, and "because [he] ha[d] no remedy ... available in state court, these claims [we]re procedurally defaulted." While the district court's denial was pending on appeal, however, the Tennessee Supreme Court promulgated Rule 39, which provided:

In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Crimi-

nal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim. On automatic review of capital cases by the Supreme Court pursuant to Tennessee Code Annotated, § 39–13–206, a claim presented to the Court of Criminal Appeals shall be considered exhausted even when such claim is not renewed in the Supreme Court on automatic review.

Tenn. Sup.Ct. R. 39. Abdur'Rahman moved under Rule 60(b) for relief from the district court's denial of habeas corpus, asserting that, under Tennessee Supreme Court Rule 39, he had indeed exhausted his claims, and, therefore, the district court should review their merits.

corpus proceeding, it would be a miscarriage of justice if we turned a blind eye to such abuse of the judicial process. Nevertheless, this is the result that would occur if habeas corpus petitioners' Rule 60(b) motions were always considered "second or successive" habeas corpus petitions. After all, a claim of prosecutorial fraud does not rely on "a new rule of constitutional law" and may not "establish by clear and convincing evidence that ... no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2). It is a claim that nonetheless must be recognized.

### B.

Mobley's case illustrates the point discussed above. Mobley believes that the district court should have granted him relief from its denial of his habeas corpus petition, because the State, according to him, committed a fraud upon the district court through Fuller's purportedly false testimony. Clearly, he is suggesting, in accordance with Rule 60(b)(3),[9] that the district court should relieve him from its judgment in the habeas corpus proceeding due to "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or misconduct" by the State. He is not presenting a claim based upon a new rule of constitutional law or a constitutional claim based on evidence that he could not have discovered through the exercise of due diligence. In effect, therefore, his claim is wholly different from one for a successive petition under 28 U.S.C. § 2244(b)(2).

The district court, in denying Mobley's Rule 60(b) motion, interpreted *Felker* as establishing a bright-line rule that "the successive petition restrictions contained in the amendments to § 2244(b) apply to Rule 60(b) proceedings." *Felker*, 101 F.3d at 661. Consequently, it found that Mobley's 60(b) motion was bound by the same restrictions as successive habeas corpus petitions under 28 U.S.C. § 2244(b). Since Mobley had not sought our permission to file such a petition under 28 U.S.C. § 2244(b)(3)(A), the district court reasoned, his motion under Rule 60(b) must therefore fail.

Mobley now argues that *Felker* has been abrogated—and thus, the district court's decision is faulty—because the Supreme Court granted certiorari in *Abdur'Rahman* as to "[w]hether every Rule 60(b) Motion constitutes a prohibited 'second or successive' habeas petition as a matter of law." My colleagues, reading the holding of *Felker* the same as the district court, stayed Mobley's execution because they were unsure if that holding would still be valid after the Court decides *Abdur'Rahman*. As I discussed in the previous section, however, I do not believe that *Felker* stands for the proposition that every Rule 60(b) Motion filed by a habeas corpus petitioner constitutes a "second or successive" habeas corpus petition, and, thus, I do not believe that the Supreme Court's grant of certiorari in *Abdur'Rahman* threatens the validity of the holding in *Felker*. Never-

---

9. Mobley does not indicate under which subsection of Rule 60(b) he seeks relief. The actual language of Mobley's motion makes clear, however, that Mobley is asserting fraud upon the district court and therefore seeking relief under Rule 60(b)(3):

> The grounds for Mr. Mobley's motion relate directly to the integrity of this Court's decisionmaking process. When this Court pre-viously considered the habeas petition, it did so based upon facts and assertions which respondent was aware (or should have been aware) were materially false. *The Court's resulting judgment denying relief was thereby tainted by the fraudulent misrepresentations of respondent.*

(emphasis added).

theless, I believe that Mobley's motion fails, because it does not meet the requirements of Rule 60(b).

Read in the best possible light, Mobley's allegations imply that the State may have committed a fraud *upon the Georgia superior court* by proffering Fuller's allegedly false testimony during Mobley's sentencing. In order to obtain Rule 60(b) relief from the district court's rejection of his habeas corpus petition, however, Mobley needs to show that fraud was committed *upon the district court. See, e.g., Rodriguez v. Mitchell*, 252 F.3d 191, 199 (2d Cir.2001) ("[A] Rule 60(b) motion to vacate a federal [habeas action] may be based on '(1) mistake, inadvertence, surprise, or excusable neglect' and '(3) fraud . . ., misrepresentation, or other misconduct of an adverse party.' Fed.R.Civ.P. 60(b). These references are to mistake, inadvertence, surprise, fraud, etc., in the course of the federal habeas proceedings, not in the litigation of the conviction against which the petition is directed.") Mobley cannot proffer any evidence in this regard because the issue of the Collins family's wishes was never raised during the district court's habeas corpus proceeding, and, therefore, no fraud could have derived from Fuller's alleged misrepresentation of them.[10] Hence, Mobley's 60(b) motion fails.[11]

IV.

As a final resort, Mobley has filed a "Motion to Recall the Mandate in Case No. 00–13980." In *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), the Supreme Court acknowledged that "the courts of appeal are recognized to have an inherent power to recall their mandates," but it emphasized that "it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Id.* at 549–50, 118 S.Ct. at 1498. In *Calderon*, moreover, the Court found that a petitioner who seeks to recall the mandate from the denial of a habeas corpus petition is bound by the strictures of AEDPA:

> In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b).

10. In his habeas corpus petition, Mobley did "contend[ ] that Judge Fuller lied under oath when he testified that the reasons he rejected Mobley's offer to plead guilty were the circumstances of the crime, Mobley's boastful attitude about the crime, Mobley's conduct while incarcerated, and the fact that Mobley was consumed with 'pure unadulterated meanness' . . . because . . . Judge Fuller had entered into [a stipulation], when he was the district attorney prosecuting the case, which stated that the reason the offer of a plea was rejected was the possibility that without a death sentence, Mobley could possibly be paroled in the future." The district court refused to consider whether Fuller's testimony *denied* Mobley due process of law, because the Georgia courts had found the claim to have been procedurally defaulted when Mobley failed to raise it on direct review. Similarly, Mobley concedes that he first presented his claim regarding Fuller's testimony about the Collins family's wishes in his Extraordi-

nary Motion for New Trial in Georgia Superior Court on July 16. Therefore, had he raised this claim in his habeas corpus petition to the district court, the court would have required him first to exhaust the claim in state court. *See* 28 U.S.C. § 2254(b)(1)(A)("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State.").

11. Even if this circuit or the Supreme Court adopted a rule that all 60(b) motions should be treated as "second or successive" habeas corpus petitions, Mobley's motion should still be denied. As I discussed in Part II, *supra*, Mobley's motion does not meet the criteria of 28 U.S.C. § 2244(b)(2). Therefore, Mobley's Rule 60(b) motion fails—regardless of how we read *Felker* or how the Supreme Court decides *Abdur'Rahman*.

Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply). *Id.* at 553, 118 S.Ct. at 1500. As discussed in Part II, *supra,* Mobley's claims do not meet the requirements of § 2244(b). Therefore, his motion to recall the mandate of our affirmance of the district court's denial of his habeas corpus petition must fail.

### V.

In summary, the panel should not postpone the resolution of Mobley's three filings. Instead, it should (1) deny his "Application for Certificate of Appealability [from an order of the United States District Court for the Northern District of Georgia denying his Motion for Stay of Execution and for Relief from Judgment Pursuant to Fed.R.Civ.P. 60(b) ] and Motion for Stay of Execution," (2) deny his "Application for Permission to File a Successive Petition for Writ of Habeas Corpus," (3) deny his "Motion to Recall the Mandate in Case 00–13980," and (4) lift the stay on Mobley's execution.